## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**ROBERT KEITH WOODALL**
      Petitioner

**v.**                                                                    **No. 5:06CV-00216-R**

**THOMAS SIMPSON, Warden**
      Respondent

### MAGISTRATE JUDGE'S REPORT
### and RECOMMENDATION

The petitioner has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Entry No. 6). The respondent has responded in opposition to the petition, and the petitioner has replied thereto (Docket Entry Nos. 16 and 21). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

### Discussion

The petitioner entered pleas of guilty in the Caldwell Circuit Court (the Honorable Bill Cunningham) to charges of capital murder, capital kidnapping, and first-degree rape. Following a jury sentencing trial, at which he asserted his Fifth Amendment right not to testify in his own behalf, he was sentenced to death for murder and concurrent life terms for kidnapping and rape. The petitioner's convictions were affirmed upon direct appeal by the Supreme Court of Kentucky. *Woodall v. Commonwealth*, Ky., 63 S.W.3d 104 (2001). Thereafter, the petitioner filed motions for post-conviction relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 and Kentucky Rules of Civil Procedure (CR) 60.02. The trial court denied the motions, and the denials were affirmed upon appeal to the Kentucky Supreme Court. 2005 WL 3131603 and 2005 WL 2674989. The petitioner raises the same thirty claims that were presented to the state courts and, therefore, has exhausted available state remedies or procedurally defaulted as to those claims.

## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).  The petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct. See 28 U.S.C. § 2254(e)(1) and *McAdoo v. Elo*, 365 F.3d 487, 493-494 (6th Cir., 2004).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case.  Id. In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision.  Id.  The court may look to lower courts of appeals' decisions, not as binding precedent, but rather to conduct the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir., 2003).

2

**First Claim**

The petitioner's first claim is that he was denied due process, his Fifth Amendment right not to testify, and a reliable sentence determination when the trial judge refused to instruct the jury to draw no adverse inference from his decision not to testify during the penalty trial.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> Woodall pled guilty to all of the charged crimes as well as the aggravating circumstances. The no adverse inference instruction is used to protect a nontestifying defendant from seeming to be guilty to the jury because of a decision not to testify. That is not the situation presented here. The instruction contemplated by *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), could not have changed the outcome of a guilty determination that the defendant acknowledged by his admission of guilt. There was no reason or need for the jury to make any additional inferences of guilt.

> There is no error in this respect. Any possible error would be nonprejudicial because the defendant admitted the crimes and the evidence of guilt is overwhelming. Woodall claims that *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), extended Fifth Amendment protection and thus the *Carter*, supra, rule to the penalty phase of a trial. *Estelle*, supra, is not a jury instruction case, unlike *Carter*. *Estelle* does not cite to *Carter* or indicate that *Carter* has been extended. The factual situation in *Estelle* is different from that presented in this case because it involved the use of an out-of-court statement the defendant made to a government expert. The statement in that case was in regard to a psychological examination by the government prosecutors which was used against the defendant without warning in the penalty trial. Neither *Carter* nor *Estelle* involved a guilty plea. Here, Woodall admitted guilt to all charges and did not contest the facts. He was not compelled to testify so there were no words that could be used against him so as to implicate the Fifth Amendment privilege as in *Estelle*.

> Woodall contends that *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), permits a guilty plea which does not waive the privilege against self-incrimination at the sentencing phase. *Mitchell*, supra, does not apply here. In *Mitchell*, the defendant pled guilty to federal charges of conspiring to distribute five or more kilograms of cocaine and of distributing cocaine within 1000 feet of a school or playground. She reserved the right to contest the amount of the cocaine at the penalty phase. The amount of the cocaine would determine the range of penalties. She only admitted that she had done "some of" the conduct charged. She did not testify. Three other codefendants did testify as to the amount of cocaine she had sold. Ultimately, the U.S. Supreme Court ruled that it would not permit a

3

negative inference to be drawn about her guilt with regard to the factual determination respecting the circumstances and details of the crime. Here, Woodall did not contest any of the facts or aggravating circumstances surrounding the crimes.

The decision of the trial court not to give an adverse inference instruction does not amount to constitutional error so as to require reversal. There is no violation of any section of the United States or Kentucky Constitution.

63 S.W.3d 104 (2001).  The magistrate judge concludes that the state court's adjudication of the petitioner's first claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  According to the petitioner, the nature of the constitutional harm in this case was that, absent the instruction, the jury was free to draw the same improper inference of lack of remorse due to silence that the trial judge himself made.  According to the petitioner (Docket Entry No. 21, pp. 29 and 32) *(emphasis added)*:

Petitioner, who did not testify at the penalty phase, requested an instruction informing the jury that he had no obligation to testify and that no adverse inference can be drawn from his failure to do so.  Petitioner was rebuffed by the trial court who determined that it would not be "intellectually honest" to give the jury instruction because Petitioner's constitutional right against self-incrimination had been waived when he pled guilty to the charges.  (TE 1589).  The trial court stated that he would not tell the jury that "you can go out and rape, murder and kidnap and admit it and then offer no testimony, no explanation, **no asking for forgiveness, no remorse**, and the jury can't consider that." (TE 1591).  The trial court refused this instruction even though the state interposed no objection to the instruction.
...
The strong likelihood that the jury drew an adverse inference from Petitioner's silence is reinforced by the actions of the trial court, a supposedly learned jurist, who held Petitioner's silence against him as an expression of a lack of remorse in deciding that the death sentence was appropriate and that death would be imposed. ... Absent a jury instruction prohibiting such an adverse inference from petitioner's silence, it is likely that the jury too improperly concluded that Petitioner **suffered no remorse** for his crimes.

4

In footnote 25, the petitioner cites to numerous cases in which the United States "Supreme Court has noted the mitigating role of **remorse** *(emphasis added)* in trials" (p. 32).

2.   *Mitchell v. United States*, 526 U.S. 314 (1999), is the most recent United States Supreme Court decision on the issue of a criminal defendant's Fifth Amendment right to remain silent during the penalty phase of trial.

3.   Mitchell pled guilty to conspiracy to distribute cocaine, reserving her right to contest, at the sentencing proceeding, the drug quantity attributable to her under the conspiracy count.  It was the district judge's duty to determine quantity.  During sentencing, the judge expressed his decision making process with candor.  He stated that he was persuaded by the testimony of Mitchell's testifying co-defendant on the issue of drug quantity and that "I held it against you that you didn't come forward today and tell me that you really only did this a couple of times.... I'm taking the position that you should come forward and explain your side of this issue."  The Court held that the district judge erred in drawing an "adverse inference with regard to the amount of drugs attributable to [Mitchell]" or any other "factual determinations respecting the circumstances and details of the crime."

4.   However, the Supreme Court specifically stated that "[w]hether silence bears upon the determination of a **lack of remorse, or upon acceptance of responsibility** ... is a separate question.  It is not before us, and we express no view on it."

5.   The petitioner's claim is premised upon an allegedly improper inference of lack of remorse due to silence.  A careful reading of *Mitchell* shows that such an inference is <u>not</u> prohibited by United States Supreme Court precedents.  Therefore, the Kentucky Supreme Court's disposition of the petitioner's first claim was not "contrary to" nor did it involve an "unreasonable application of" United States Supreme Court precedents as contemplated by 28 U.S.C. § 2254(d).

5

6.  In his dissenting opinion, Justice Scalia opined that, while the Fifth Amendment protects a criminal defendant from compelled testimony during sentencing, it should not also "shield her from the natural and appropriate consequences of her uncooperativeness at the sentencing stage," including logical inference with respect to the factual circumstances and details of the crime. Justice Scalia predicted that the majority approach would result in a split of authority in the lower courts and threatened the following perverse results:

> Of course the clutter swept under the rug by limiting the opinion to "determining facts of the offense" is ... application of today's opinion ... to all determinations of acceptance of responsibility, repentance, character, and future dangerousness, in both federal and state prosecutions – that is to say, to what is probably the bulk of what most sentencing is all about. If the Court ultimately decides – in the fullness of time and after a decent period of confusion in the lower courts – that the "no inference" rule is indeed limited to "determining facts of the offense," then we will have a system in which a state court can increase the sentence of a convicted drug possessor who refuses to say how many ounces he possessed – not because that suggests he possessed the larger amount (to make such an inference would be unconstitutional!) but because his refusal to cooperate suggests he is unrepentant.

7.  Just as Justice Scalia predicted, in the wake of *Mitchell*, the lower courts have confronted the issue of whether it is unconstitutional for the sentencing entity to hold the defendant's silence against her as showing a lack of remorse.  Lower courts have confronted the issue in the context of petitions pursuant to 28 U.S.C.  § 2254, and have concluded that the decision by the state court of no constitutional violation based upon an inference of lack of remorse does not involve an unreasonable application of United States Supreme Court authorities.  See, for example, *Isaacs v. Head*, 300 F.3d 1232 (11th Cir., 2002), *Hemby v. Hannigan*,117 F.Supp.2d 1057 (D.Kan.,2000), *Burr v. Bertrand*, 2007 WL 3228830 (E.D.Wis.) and *Emmett v. True*, 2006 WL 482417 (W.D.Va.).

8.   Because it was not necessarily improper for the jury to consider the petitioner's silence as showing a lack of remorse, the trial judge did not err in denying an instruction requiring the jury not to consider the petitioner's silence.

### Second Claim

The petitioner's second claim is that he was denied due process and equal protection of the law because the trial judge failed to conduct an inquiry into and make findings of fact concerning the alleged discriminatory intent and credibility of the reasons given by the prosecutor for a peremptory challenge of the only African American in the final jury pool.   In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> At the conclusion of the voir dire examination, only one African American remained in the jury pool. The other African American called for jury duty had been challenged and removed for cause. No motion was made to strike the remaining juror for cause but the prosecution exercised a peremptory strike against her. In a response to an objection by the defense, the prosecutor stated that the juror had been struck because she answered a question on a jury questionnaire to the effect that she "did not trust anyone." Woodall contends that the prosecution struck the juror solely because of her race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

> In *Batson*, supra, the United States Supreme Court promulgated a three step process for determining whether peremptory challenges had been properly exercised. First, a defendant must establish a prima facie case of racial discrimination. Second, the prosecutor must provide a race neutral reason for the exercise of the peremptory challenge, and third, the trial court is to conduct an inquiry into the ultimate question of whether there was discriminatory intent in the exercise of the peremptory challenge. Our examination of the record in this case indicates that the justification for striking peremptorily the one remaining African American juror was not a pretext for racial discrimination. The Commonwealth can rely on a jury questionnaire to derive its race neutral reasons for striking a juror. *Commonwealth v. Snodgrass*, Ky., 831 S.W.2d 176 (1992). An attitude of mistrust expressed on a juror questionnaire should be given the same weight as an attitude of mistrust or bias expressed by a juror on voir dire examination. *Batson* was not intended to remove all prosecutorial discretion as to the use of peremptory challenges but only to eliminate the obviously bad practice of eliminating potential jurors because of their race only. The evaluation of whether the offered reasons for a prosecutorial challenge remains in the sound

7

> discretion of the trial judge. <u>See</u> *U.S. v. McMillon*, 14 F.3d 948 (4th Cir., 1994), which stated in part that the trial court, present on the scene, found the reasons articulated were both nondiscriminatory and actual. Under all the circumstances, the trial judge did not abuse his discretion by rejecting the *Batson* challenge.

63 S.W.3d 104 (2001).  The magistrate judge concludes that the state court's adjudication of the petitioner's second claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

   In so finding, the undersigned has been guided by the following principles:

   1.  According to the petitioner, the trial judge failed to perceive that there was a potential *Batson* error and that the mere fact that the petitioner was white and the removed juror was black did not <u>ipso facto</u> preclude application of *Batson*.   The petitioner relies upon the fact that "[o]ther than observing Petitioner's race is white, the trial court simply 'noted' the defense objections and moved on. (TE 1166)" (Docket Entry No. 21, p. 36).

   2.  The petitioner is correct that the requirement of race-neutral peremptory challenges applies even when the defendant is of a different race than the challenged jurors.  *Powers v. Ohio*, 499 U.S. 400 (1991).  However, just because the trial judge noted the petitioner's race does not mean than he was unaware of *Powers*.  A more likely reason why the trial judge "moved on" without an elaborate on-the-record articulation of the third step of the *Batson-Powers* inquiry (<u>see</u> discussion of *Batson* by Kentucky Supreme Court, <u>supra</u>) is that he was satisfied that the prosecution's reliance upon the black juror's responses to a juror questionnaire constituted a non-pretextual, race-neutral explanation for its desire to utilize a peremptory strike.

   3.  To the extent the petitioner's position is that the trial judge failed to adequately develop the  record with respect to completion of the third step of the *Batson* inquiry, it has been held that

"the burden rest[s] upon the petitioner to rebut and develop a record demonstrating the prosecution's proffered nondiscriminatory rationale for the peremptory strike was pretextual." *Bell-Bey v. Roper*, 499 F.3d 752 (8th Cir., 2007) citing *Rice v. Collins*, 546 U.S. 333, 338 (2006). Similarly, "a trial court can fulfill its duty to rule at the so-called 'step three' of the *Batson* framework by expressing a clear intention to uphold or reject a strike after listening to the challenge, the race-neutral explanation and the arguments of the parties." *Messiah v. Duncan*, 435 F.3d 186, 189 (2nd Cir., 2006).

4.    Alternatively, the undersigned concludes that the trial judge implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the *Batson* inquiry. See *Hightower v. Terry*, 459 F.3d 1067 n.9 (11th Cir., 2006) ("The trial court's overruling of Hightower's *Batson* objection would have defied logic had the court disbelieved the prosecutor's race-neutral explanations. We may therefore make the common sense judgment – in light of defense counsel's failure to rebut the prosecutor's explanations and the trial court's ultimate ruling – that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the *Batson* inquiry.").

**Third Claim**

The petitioner's third claim is that the trial judge abused his discretion by striking two potential jurors for cause. In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> Initially, we must observe that jurors who are substantially impaired in their ability to impose a death sentence may be excused for cause. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). After an exhaustive examination of the record in regard to the first potential juror, we conclude that the trial judge did not abuse his discretion in excusing her for cause. The potential juror was relatively articulate and knowledgeable about the different range of penalties

9

available in the case. She expressed a considerable interest in a penalty of life in prison for 25 years without hope of parole. Near the end of the voir dire by the prosecution, she clearly stated that she did not like capital punishment and that she would not consider it period. Although the potential juror was 78 years old, she seemed to be in full command of her faculties and knowledgeable about the legal system.

The second juror indicated a hesitancy and an ambivalence about the death penalty. When asked if he could consider the range of possible punishments, including death, he answered "No sir, I don't think I could do that." Later, when asked if he could consider death if the judge instructed the jurors to give each one fair consideration, the juror answered, "I don't think I consider the death penalty as far as something like that, no sir." The second juror was struck for cause and the defense made no objection. Both jurors were properly struck for cause.

63 S.W.3d 104 (2001). The magistrate judge concludes that the petitioner has presented no "clear and convincing evidence" as contemplated by 28 U.S.C. § 2254(e)(1) that the trial judge's factual determination that the wavering prospective jurors should be excluded was erroneous. Alternatively, the state court's adjudication of the petitioner's third claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  The petitioner's claim with respect to the second juror who was struck for cause is procedurally defaulted under state law and may not be considered by this federal habeas court because the defense made no contemporaneous objection.

2.  Even if the claim is not defaulted, upon habeas review, determinations as to individual juror bias, in both trial and capital sentencing juries, are factual questions entitled to the presumption of correctness codified at 28 U.S.C. § 2254(e)(1). See *Wainwright v. Witt*, 469 U.S. 412 (1985), *Darden v. Wainwright*, 477 U.S. 168, 175 (1986), and *Patton v. Yount*, 467 U.S. 1025 (1984) (finding that impartiality of individual jurors is a question of fact). A petitioner must rebut a finding of fact by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

3.  The underlying rationale for the presumption of correctness of a trial judge's decision to exclude a prospective juror from a death penalty proceeding was well articulated in *Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir., 2006), as follows:

> Lay persons come to the courthouse with varying levels of education and thought about capital punishment. The opening of a capital trial is an alien environment to citizens called from jobs and homes. Lay persons are confronted by skilled lawyers engaged in an adversarial contest who probe their views on a profound and divisive social issue, usually with a goal of retention or exclusion shaping the questions. We know from experience that the result is often a series of responses that seem to shift and turn and even conflict as questions are framed, reframed and just repeated. A stranger to the trial reading the bare transcript is left with incomplete sentences and elliptic answers with no reconciling theme. Yet one present at trial may well have had a quite different picture. Inflection of voice and body movements of each cast member, absent from the transcript, are present at trial. Until at least twenty-one years ago, such transcripts confounded appellate courts. *Wainwright v. Witt* responded to the not infrequent frustration of appellate review of the calls of trial judges made in the process of selecting jurors for the trial of capital cases with a pragmatic solution.  The court acknowledged that a prospective juror's bias "involves credibility findings whose basis cannot be easily discerned from an appellate record." The Court observed: "[T]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen [by the trial court] below, but cannot always be spread upon the record." "Despite this lack of clarity in the printed record, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." Ms. Castro is the classic wavering prospective juror. This was a call to be made by the trial judge, and there is no record basis for concluding that the court abused its discretion.

4.  Viewed in a light most favorable to the petitioner, the excluded jurors were wavering prospective jurors.  The petitioner has presented no "clear and convincing evidence" as contemplated by 28 U.S.C.  § 2254(e)(1)  that the trial judge's factual determinations were erroneous.  In *Brown v. Lambert*, 2004 WL 5331923 (W.D.Wash.) and *Cummings v. Polk*, 2006 WL 4007531 (E.D.N.C.), the district courts reached this same conclusion.

5.  Alternatively, to the extent the court should review the state court's decision of no abuse of discretion by the trial judge through the lens of 28 U.S.C.  § 2254(d), even if this court were to

disagree with the trial judge's determination, we cannot conclude that it was contrary to or involved an unreasonable application of clearly established United States Supreme Court precedents. See *Knight v. Dretke*, 2004 WL 2026809 (N.D.Tex.).   At best, the petitioner has shown that substantial evidence would have supported a decision by the trial judge to retain the stricken jurors. That does not satisfy our standard of review as codified at 28 U.S.C.   § 2254(d).

### Fourth Claim

The petitioner's fourth claim is that the trial judge abused his discretion by failing to strike six allegedly unqualified jurors for cause and thereby violated his right to an impartial jury and impaired his use of peremptory challenges.   In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> Woodall used all ten of his peremptory challenges; three of the peremptory challenges were exercised on jurors he had sought to remove for cause. He also unsuccessfully challenged for cause three of the twelve jurors who sat on the case. Motions to strike jurors for cause are within the sound discretion of the trial judge. [*Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993).]

> In regard to Juror 278, the allegation that she was impaired because her sister had been raped is without merit. The refusal to strike jurors for cause because they had previously been victims of violent crimes has been repeatedly upheld. See [*Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000)]; *Stoker v. Commonwealth*, Ky., 828 S.W.2d 619 (1992). Here, the crime victim was the juror's sister rather than herself. There was no cause for strike.

> It was never established that the employment of the juror at the Kentucky State Penitentiary gave her any special knowledge about parole, and there is no authority for the proposition that mere knowledge about parole eligibility is a basis for a challenge for cause. The trial judge recognized the fact that the potential juror was taking antidepressant medication and properly believed that she could serve if necessary. *Bowling*, supra. There was no abuse of discretion in regard to the potential juror. The contention that the juror was biased because her daughter's band competed against the victim's band was unsupported by the record.

> Juror No. 176 possessed no special knowledge that could have influenced other jurors. The argument that the juror was situationally impaired because she had

worked at the mini-market for one month more than six months after the crime occurred is without merit. The juror specifically denied on voir dire that she knew one of the prosecution witnesses and there was no evidence to substantiate the claim by Woodall. The juror indicated on voir dire that any conversations she may have had with fellow workers at the mini-mart were of a general nature. There was no abuse of discretion in refusing to strike the juror for cause.

Juror No. 94. Woodall argues that the juror should have been struck [sic.] for cause because she could not consider a minimum sentence. The record shows that the juror indicated on two different occasions that she could consider the entire range of penalties. In response to the trial judge's question of whether she could consider a twenty-year sentence if so instructed, she answered she could if it were supported by the evidence. Although a juror is disqualified if he or she cannot consider the minimum penalty pursuant to [*Grooms v. Commonwealth*, Ky., 756 S.W.2d 131 (1988)], excusal for cause is not required merely because the juror favors severe penalties, so long as he or she will consider the full range of penalties. *Hodge*, citing *Bowling*. Per se disqualification is not required merely because a juror does not instantly embrace every legal concept presented during voir dire examination. *Hodge*.

Woodall claims that Juror No. 185 should have been excused for cause pursuant to KRS 29A.080(2)(d) because he had an insufficient knowledge of the English language and was unable to understand what was being said in voir dire. Woodall also argues that the juror never indicated whether he could consider I.Q. of 74 of Woodall as a mitigating factor. No. 185 sat as a juror. He stated on two separate occasions that he could consider mitigating evidence and follow the instructions of the trial judge on mitigating evidence. During voir dire, the juror stated he could consider someone's stability as a mitigating circumstance. There was no abuse of discretion in denying the motion to strike for cause.

Juror No. 16 was removed from the case by peremptory challenge after a motion to strike for cause had been denied. Woodall claims that the juror was impaired because he could not consider mitigating evidence. Although the juror may have been temporarily confused on voir dire, he finally indicated that he would consider mitigating evidence, "If the court instructs me that way." The juror satisfied the requirements of *Grooms*, supra, and the trial judge did not abuse his discretion in refusing to strike the juror for cause.

Potential Juror No. 8 was peremptorily challenged after the trial judge had refused to strike him for cause. Woodall complains that the motion for cause was denied because the juror had properly answered what he labels as the "leading questions" by the judge about considering the entire range of punishment. When initially asked if he could consider a 20-year minimum sentence, the juror answered "I don't know," and later proclaimed that he was for the death penalty. After appropriate

13

rehabilitation by the trial judge, the juror indicated that he would base any decision in the case as to punishment on the evidence presented. The trial judge did not use leading questions in order to elicit such an answer. The proscription provided in *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713 (1991), is not applicable.

The refusal of the trial judge to strike jurors for cause did not violate the right to a fair and impartial jury and did not unnecessarily compromise his use of the allotted peremptory challenges.

63 S.W.3d 104 (2001).  The magistrate judge concludes that the petitioner has presented no "clear and convincing evidence" as contemplated by 28 U.S.C.  § 2254(e)(1) that the trial judge's factual determination that the jurors should be excluded was erroneous.  Alternatively, the state court's adjudication of the petitioner's third claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  The petitioner claims that the trial judge should have stricken six jurors for cause.  The petitioner eventually eliminated three of these jurors through utilization of peremptory challenges (Nos. 278, 16, and 8), and three sat as jurors during the sentencing trial (Nos. 176, 94, and 185).

2.  *Ross v. Oklahoma*, 487 U.S.  81 (1988), held as follows:

Peremptory challenges are not of constitutional dimension. They are a means to achieve an impartial jury. So long as the jury that sits is impartial, the fact that the defendant has to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

Similarly, it has been held that "a defendant's exercise of peremptory challenges ... is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *United States v. Martinez-Salazar*,  528 U.S. 304, 317 (2000).  In such cases, "the system worked precisely as intended."  *United States v. Quinn*, 230 F.3d 862 (6th Cir., 2000).  The magistrate judge concludes that the petitioner waived any constitutional complaint with respect to juror nos. 278, 16, and 8 by removing them through peremptory strikes.

14

3.   As to juror nos. 176, 94, and 185, a federal habeas court must presume any factual findings made by the state courts to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The question of whether a particular juror is qualified is "plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). This is so because of the nature of the voir dire process, designed specifically to identify biased jurors, and because a trial court's ruling on a motion to strike for cause is "essentially one of credibility, and therefore largely one of demeanor." Id. at 1038.

4.   The petitioner has presented no "clear and convincing evidence" as contemplated by 28 U.S.C.  § 2254(e)(1)  that the trial judge's factual determination to retain the six jurors in question was erroneous.  Alternatively, the state court's decision of no abuse of discretion by the trial judge was not contrary to nor did it involve an unreasonable application of clearly established United States Supreme Court precedents.

### Fifth Claim

The petitioner's fifth claim is that the trial judge erred by instructing the jury, in effect, to find mitigating circumstances unanimously and beyond a reasonable doubt.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> Woodall ... contends that the jury instructions, when read as a whole and given their common sense meaning, lead to a conclusion that the entire jury had to be unanimous. We find such argument unconvincing.  This Court has repeatedly indicated that an instruction on unanimous findings on mitigation is not required. [*Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993)]. This situation does not violate the doctrine set out in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860,

15

> 100 L.Ed.2d 384 (1988), because there was no requirement the jurors unanimously reach a conclusion regarding any mitigating factor. Each individual juror was free to examine and react to any mitigating factor when determining the appropriate sentence. Any juror who found a mitigating factor could use that fact to prevent the unanimous sentence of death.

63 S.W.3d 104 (2001).  The magistrate judge concludes that the petitioner has presented no "clear and convincing evidence" as contemplated by 28 U.S.C.  § 2254(e)(1) that the state court erroneously determined that the jury instructions as a whole did <u>not</u> require the jury to find any mitigating factor to be present unanimously and/or beyond a reasonable doubt.  Therefore, the petitioner's reliance upon  *Mills v. Maryland*, 486 U.S. 367 (1988), lacks a necessary factual predicate.  Alternatively, the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Sixth Claim

The petitioner's sixth claim is that the verdict form used by the jury was erroneous.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> Similar arguments have been rejected in [*Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000); *Foley v. Commonwealth*, Ky., 942 S.W.2d 876 (1996); *Haight v. Commonwealth*, Ky., 938 S.W.2d 243 (1996)]; and *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992). Federal courts have also refused to grant relief.  <u>See</u> *James v. Whitley*, 926 F.2d 1433, (5th Cir., 1991); *Flamer v. Delaware*, 68 F.3d 736 (3rd Cir., 1995).

63 S.W.3d 104 (2001).  The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

16

### Seventh Claim

The petitioner's seventh claim is that there were numerous improper and prejudicial comments by the prosecutor during closing arguments, all of which resulted in denying due process and a reliable determination of his sentence.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

Woodall claims that

A) The prosecutor appealed to the jurors' sense of responsibility to the community.

B) That the prosecutor expressed his personal opinion that death was the only true punishment and that for the sake of justice, the returning of such a penalty was the right thing to do.

C) The prosecutor improperly contrasted the pure goodness of the victim and sympathy for her family against the evil of the defendant.

D) The prosecutor improperly commented on the silence of the defendant at trial and denigrated the defense for allowing him not to testify.

E) The prosecutor misstated evidence and asked the jury to speculate about matters not in evidence.

F) The prosecutor misstated the law and nullified the instructions of the court concerning mitigating circumstances.

The prosecutor did not improperly appeal to the jury's sense of responsibility to the community. A prosecutor may call on a jury to do its duty. *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407 (1988).

It should be noted that there were objections to portions of the closing statement by the prosecutor, but no objection was made to the errors alleged under this issue. It was not improper for the prosecutor to give his interpretation of the evidence and his recommendation as to the punishment. <u>See</u> *Hamilton v. Commonwealth*, Ky., 401 S.W.2d 80 (1966). The prosecutor's argument was merely to give his recommendation based on the facts presented as well as the guilty plea, including the aggravating circumstances. The comments of the prosecutor were not inappropriate. The statements made by the prosecutor about both victim and defendant are not the basis for error. All of the comments made by the prosecutor were supported by the evidence. Of course, the defense had the opportunity for final closing arguments and response as thought to be necessary.

17

The Commonwealth may portray the reality of the violence, giving some background and information regarding the victim in order to give a full understanding of the nature of the crime. [*Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993)].  In a concurring opinion, it has been stated that a prosecutor can provide the fact finder with a quick glimpse of the life the criminal chose to end so as to remind the jury that the victim was a unique human being. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). We agree. We have found no error in bringing to the attention of the jury that the victim was a living person, more than just a nameless void left somewhere on the face of the community. *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984). The references to the victim and her family did not in any way deprive Woodall of a fair and impartial trial. Victim impact evidence is another method of informing the sentencing authority about the specific harm caused by the crime. *Payne*, supra.

There was no improper reference to the lack of remorse or silence by the accused. We find nothing in the remarks of the prosecutor that refers to the lack of remorse or silence, but only in emphasis on the fact that Woodall pled guilty after he realized the amount of evidence the state had against him. The remarks used in this case are only a comment on defense strategy by the prosecutor. *Slaughter*, supra. The prosecutor was entitled to make a comment on the demeanor of Woodall in the courtroom. There was no objection to this comment and no prejudice resulted. It did not refer to a lack of remorse or silence or failure to testify. The prosecutor did not urge the jury to consider the plea as an aggravator.

The comments by the prosecutor were reasonable inferences drawn from the evidence. The prosecutor did not misstate evidence or ask the jury to speculate about matters not in evidence. Clearly, the prosecutor can give his opinion of the evidence. Cf. *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13 (1998). In addition, the evidence supports the inference that the clothing of the victim had been forcefully removed. The prosecutor did not improperly comment on the fact that a defense witness testified on direct examination that during the course of three years, Woodall sexually abused both of her daughters, and that he had gone to prison for sexually abusing another girl and not her two daughters. The prosecutor merely made a reasonable inference that it was unknown how many counts of sexual abuse were outstanding based on the evidence.

The mere phrase used by the prosecutor, "When does it end?" does not imply that Woodall would continue to be dangerous so as to invoke the condemnation expressed in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984). This Court has recently approved the consideration by the jury of future dangerousness in [*Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000)] quoting *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct 2187, 129 L.Ed.2d 133 (1994).

Finally, the prosecutor did not misstate the law or nullify the jury instructions regarding mitigating circumstances. The prosecutor is entitled to argue that mitigating evidence is entitled to very little weight. See *Tamme*. Defense counsel argued extensively to the jury about all the mitigating factors. Woodall has shown no actual prejudice. Many of the allegations presented under this assignment of error suggest that the decision at trial not to object was only trial strategy.

63 S.W.3d 104 (2001). The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1. The Kentucky Supreme Court relied upon the fact that "no objection was made to the errors alleged under this issue." Under Kentucky law, if there was no contemporaneous objection to the prosecutor's closing argument, the issue is waived as a matter of state law unless the defendant can show that the acts complained of rise to the level of palpable error. *Justice v. Commonwealth*, Ky., 987 S.W.2d 306, 316 (1998). The Kentucky Supreme Court found no palpable error. Therefore, his claims are procedurally defaulted under state law and may not be considered by this federal habeas court.

2. Even if the petitioner's claims were not waived, on habeas review, prosecutorial misconduct is subject to harmless error analysis. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir., 1997). A petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The petitioner has failed to show a harmful error.

3. Even if the petitioner's claims were not waived and rose to the level of harmful error, they are without merit. Prosecutorial misconduct must be so egregious as to deny petitioner a

19

fundamentally fair trial before habeas corpus relief becomes available. Thus, "[o]n habeas review, the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir., 2006). The "touchstone of due process analysis .... is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir., 1993).

4.   The test for determining whether habeas relief is available based upon improper prosecutorial remarks made in closing argument may be described as follows. First, the court should determine whether the remarks were improper by examining the context of the remarks and existing precedent. *United States v. Carroll*, 26 F.3d 1380, 1387-1389 (6th Cir., 1994). If the remarks were improper, the court should determine whether they were "flagrant" by considering the following factors:

> Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.

Id.   If the remarks are flagrant, a new trial should be ordered. If not flagrant, the court should still determine whether the remarks were harmless error. Id. at p. 1390.

5.   Even if the prosecutor's remarks were improper, they were not flagrant and/or harmful.

**Eighth Claim**

The petitioner's eighth claim is that the trial judge placed excessive and unfair restrictions on his ability to develop information about jurors on voir dire and as a result, his right to exercise peremptory challenges intelligently and his guarantee of a fair and impartial jury were violated. In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

20

[The petitioner] claims that the trial judge repeatedly and severely curtailed his ability to question jurors during voir dire. There can be no question that an adequate voir dire examination is essential to the seating of a fair and impartial jury. This is particularly true in a death penalty case where an adequate voir dire process has been held to be mandatory. *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989).

A) It was not an abuse of discretion by the trial judge to restrict the voir dire of Woodall concerning specific mitigation evidence which he planned to present. The trial judge permitted Woodall to ask general mitigation questions, but prohibited questions about specific mitigating factors such as the low I.Q. attributed to Woodall. Federal courts have recognized that denying a defendant the right to voir dire jurors on specific mitigating factors is not an abuse of discretion. See *U.S. v. Tipton*, 90 F.3d 861 (4th Cir., 1996); *U.S. v. McVeigh*, 153 F.3d 1166 (10th Cir., 1998).

As in *Tipton*, supra, Woodall sought to question the jury about specific mitigating circumstances rather than a generalized inquiry as allowed by the trial judge. Here, the trial judge had asked jurors on individual voir dire whether they were willing to consider the entire range of penalties and had also asked them if they were willing to consider mitigating evidence. The judge permitted Woodall to question jurors extensively regarding mitigating circumstances so long as the questions were general and did not inquire into specific mitigation. The trial judge has broad discretion in the area of questioning on voir dire. *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). Questions are not competent when their evident purpose is to have jurors indicate in advance or to commit themselves to certain ideas and views upon final submission of the case to them. *Ward*, supra. The mere fact that more detailed questioning might have somehow helped the accused in exercising peremptory challenges does not suffice to show abuse of the discretion in conducting the examination. See *Tipton*, supra; see also, Annotation, "Propriety and Effect of Asking Prospective Jurors Hypothetical Questions, on Voir Dire, as to How They Would Decide Issues of the Case." 99 A.L.R.2d 7; see also *Commonwealth v. Moon*, 389 Pa. 304, 132 A.2d 224 (1957), cert. dismissed, 355 U.S. 908, 78 S.Ct. 335, 2 L.Ed.2d 270; *Commonwealth v. Everett*, 262 Pa.Super. 61, 396 A.2d 645 (1978).

Woodall was trying to get jurors to indicate in advance what their views were regarding his I.Q. of 74.  He was seeking to oblige jurors to commit themselves by either accepting a specific mitigator or rejecting it before any evidence was heard. The trial judge was attempting to protect against such danger and did not abuse his broad discretion. It should be recalled that in 1991, I.Q. testing measured Woodall's I.Q. at 74, and in 1998, a prosecution psychologist measured his full-scale I.Q. at 78. Both scores are 4 to 8 points respectively higher than the definition of a seriously mentally retarded offender as found in KRS 532.130(2). KRS 532.140 does not permit execution of a person below an I.Q. of 70.

21

B) Woodall complains that the trial judge abused his discretion by denying voir dire examination into the attitudes of the jurors regarding the right of Woodall to remain silent. We disagree. The trial judge correctly refused to allow proposed questions on the Fifth Amendment rights of the accused. There was no error on the part of the trial judge in this respect and in any event, it is nonprejudicial and harmless beyond a reasonable doubt as noted earlier.
...

D) It was not error for the trial judge to deny Woodall an opportunity to voir dire on the subject of whether the jury must be unanimous in its findings of mitigation. Again, the trial judge has broad discretion to supervise the voir dire examination. If there was any confusion in the mind of the jury about mitigating circumstances at the voir dire stage, it was clearly resolved by the jury instructions which were proper. It was clear to the jurors that if one of them believed that Woodall did not deserve the death penalty, they could not return a verdict of death. The trial judge did not abuse his discretion by not permitting further inquiry by Woodall in this regard.

E) The refusal of the trial judge to permit defense counsel to voir dire potential jurors on their opinions about the differences in the burden of proof for mitigating circumstances and aggravating circumstances does not amount to reversible error. Mitigating circumstances do not have to be proven beyond a reasonable doubt. See *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). On the other hand, KRS 532.025(3) requires aggravating circumstances to be proved beyond a reasonable doubt. Such a difference is not a disparity which would give rise to either a challenge for cause or a peremptory.
...

G) Woodall argues that whether jurors can base their verdict on evidence is a separate inquiry from whether they can consider minimum sentences. He contends that the qualification placed on the questioning about the ability to consider minimum sentences was improper. The trial judge directed that the jurors only had to be able to consider a minimum sentence "if warranted by the evidence," and that such qualifications on the question were designed to conceal bias and not to disclose it.

Again, there is no question that Woodall is entitled to a jury that can fairly consider the entire range of punishments for his crimes. *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131 (1988). It was proper for the trial judge to make it abundantly clear to the jurors that they must consider their verdict in light of the instructions given to them by the court and the evidence presented. The qualifying language required by the trial judge was proper and made it clear that if the instructions and the evidence so warranted, they could consider a minimum penalty. That is all that is required by the law. See *Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000); *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993).

22

63 S.W.3d 104 (2001).  The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  A criminal defendant has the right to a fair and impartial jury. To secure this right, the Supreme Court has held that a defendant must have an adequate voir dire to identify unqualified jurors. See *Morgan v. Illinois*, 504 U.S. 719, 728 (1992).  However, state trial courts are granted wide discretion in conducting jury voir dire. See *Mu'Min v. Virginia*, 500 U.S. 415, 424-427 (1991) and *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir., 1996).  The state's obligation to impanel an impartial jury may be satisfied by less than a specific inquiry into a particular prejudice feared by the defendant. See *Ristaino v. Ross*, 424 U.S. 589, 595 (1976) and *Ham v. South Carolina*, 409 U.S. 524, 527-528 (1973).

2.  The trial judge's preclusion of specific inquiry by defense counsel during voir dire did not rise to the level of denying the petitioner a fair and impartial jury.

### Ninth Claim

The petitioner's ninth claim is that the use by the trial judge of statements made by him during a sex offender treatment evaluation, which the trial judge ordered after he pled guilty but before his penalty trial, to sentence him to death was unconstitutional.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> [Woodall] claims that the trial judge used the statements to sentence him to death and a term of years imprisonment which was a violation of his right against self-incrimination. We disagree.

> Woodall made no incriminating statements about the crimes for which he had already pled guilty. He denied remembering the circumstances surrounding the crimes. None of his rights were violated.

23

Approximately one week after Woodall pled guilty, the trial judge ordered an evaluation be conducted pursuant to KRS 532.050(4) by the sex offender treatment program. Defense counsel objected to the evaluation and the trial judge stated that he would not release the report to the defense nor the prosecution until after the penalty trial had been completed. The report stated that Woodall was extremely guarded in answering all questions and most responses were extraordinarily brief in nature. The evaluator observed that the interview was abbreviated and further limited by the defendant's professed inability to recall any specific events surrounding the offense.

The trial judge properly ordered the report pursuant to KRS 532.050(4) which provides in part that if a defendant has been convicted of rape, the court shall, prior to determining the sentence, order an evaluation to be conducted by the sex offender treatment program. Subsection 1 of the statute does not preclude the trial judge from ordering a presentence investigation report simply because this is a capital case. The statute does not require a presentence investigation report, but neither does it preclude such a report. The presentence investigation report is different from the sexual offender evaluation in subsection 4 of the statute.

The report was not used during the penalty phase and was not given to either counsel until the time of sentencing when the trial judge approved the sentence as fixed by the jury. Pursuant to KRS 532.025 and 532.050, it is the duty of the trial judge to impose an appropriate sentence for the individual once guilt has been determined. Here, Woodall pled guilty and so there is no authority to prevent the trial judge from ordering the sex offender evaluation and the presentence report. Before pronouncing sentence, the trial judge gave the defendant the opportunity to make any amendments, alterations or changes to any of the reports. Woodall did submit some letters on his behalf but did not make a request for amendments, corrections or make objections. There is no evidence that the trial judge considered any statement made by Woodall during the evaluation in reaching the sentence ultimately imposed. The rights of the accused were not violated because he made no incriminating statements during the evaluation.

*Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), is not applicable because it is factually different. In *Mitchell*, supra, the defendant did not deny committing crimes but only admitted some of the offenses she was charged with. Here the silence of Woodall did not cause the judge to assume that he had committed other crimes. He had already admitted committing the offenses when he pled guilty.

Woodall never expressed any remorse during the trial and the trial judge considered the lack of expression of remorse when he followed the penalty fixed by the jury, however, there is no evidence the trial judge assumed lack of remorse from the evaluation report. We find relying on the principles in *Estelle v. Smith*, 451 U.S. 454,

24

> 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), unpersuasive. In *Estelle*, <u>supra</u>, the Supreme Court held that the prosecution's use of psychiatric testimony at the sentencing phase of the defendant's capital murder trial to establish his future dangerousness violated his constitutional rights. Here, there is simply no evidence that the trial judge used the statements of Woodall during the evaluation to establish lack of remorse or the appropriateness of the penalties fixed by the jury.

63 S.W.3d 104 (2001).  The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  To the extent the petitioner's claim is that the trial judge lacked an adequate basis in state law to order a psychological evaluation report of the petitioner, the issue is not cognizable in a federal habeas corpus petition.  <u>See</u> 28 U.S.C.  § 2254(a) (a federal court may "entertain an application for a writ of habeas corpus ... only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

2.  To the extent the petitioner's claim is based upon *Estelle v. Smith*, 451 U.S. 454 (1981), it is unpersuasive because it lacks an essential factual basis, to-wit, that the trial judge used the statements of the petitioner during the evaluation to establish lack of remorse or the appropriateness of the penalties fixed by the jury.

3.  The Kentucky Supreme Court found that the trial judge did not rely upon statements in the evaluation report but rather upon the petitioner's lack of remorse at the sentencing trial itself in support of his acceptance of the jury recommended death sentence.  The undersigned regards this as a factual finding that is entitled to deference upon federal habeas review.  <u>See</u> 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

4.  The petitioner has presented no clear and convincing evidence that the trial judge relied upon his statements in the evaluation report as opposed to his lack of remorse at trial.

5.  Even if the petitioner could show that the trial judge, in fact, relied upon the report, the petitioner is unable to show that the trial judge would not have reached the same conclusion based upon his lack of remorse at trial.  Hence, any error was harmless.

### Tenth Claim

The petitioner's tenth claim is that his guilty plea was invalid because it was not a knowing, voluntary and intelligent waiver of his constitutional rights.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> [Woodall] states that the plea was not entered voluntarily because of his low intelligence and the impairment of counsel and that he did not understand that he would be waiving his Fifth Amendment privilege by pleading guilty and finally that the trial judge did not adequately establish the factual basis for the plea. He concedes that this issue is unpreserved.
>
> Woodall specifically answered the questions of the court regarding the voluntariness of the plea in the affirmative on three different occasions. It is clear that Woodall understood all the consequences of his plea. Counsel made it clear that he had discussed the case with the defendant and he stated that he believed the plea to be voluntary. As stated in *Kotas v. Commonwealth*, Ky ., 565 S.W.2d 445 (1978), citing *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the validity of a guilty plea is determined not by reference to some magic words but from the totality of the circumstances surrounding it. Here, there was the necessary affirmative showing in the record that the plea was intelligently and voluntarily made as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and noted in *Sparks v. Commonwealth*, Ky.App., 721 S.W.2d 726 (1986).
>
> There is no convincing evidence that defense counsel was impaired when he advised Woodall to plead guilty. There is a letter from counsel's physician stating that the lawyer was physically and emotionally exhausted but that was almost two months before the plea was entered. There was no indication that counsel was impaired during the plea colloquy, nor was health ever raised as an issue during the proceedings. The plea was properly accepted by the trial judge.

> The claim by Woodall that he was not informed of the effect of the guilty plea is without merit. The defendant was fully informed of his rights by the trial judge. There is nothing in the record to indicate that he did not have a full and complete understanding of his rights and that he voluntarily chose to plead guilty.
>
> The record indicates that the trial judge carefully explained the factual basis for each charge against Woodall who then admitted his guilt as to all charges. The procedure followed the requirements of *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

63 S.W.3d 104 (2001).  The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  The Kentucky Supreme Court found that the claim was not properly preserved for appellate review.  Perhaps the state court based this finding upon the fact that the petitioner filed no motion to withdraw the guilty plea or to vacate the conviction.  A federal habeas court may not consider issues that are procedurally defaulted under state law.

2.  Any error was harmless because, even if the petitioner had insisted upon going to trial on the issue of guilt/innocence, because the evidence against the petitioner was damning and essentially uncontradicted, there is no reasonable probability that the petitioner would have been found "not guilty."

### Eleventh Claim

The petitioner's eleventh claim is that the trial judge abused his discretion by denying a motion for a continuance on June 12, 1998.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

27

[Woodall] claims that the denial impaired his ability to present a mental health defense and otherwise denied him due process. Woodall was indicted on March 18, 1997 and his trial was set for October 28 of the same year. He sought and was granted a number of relatively routine pretrial continuances, examinations and even a change of venue. The defense received a continuance from February 23, 1998 until April 13 because of the unsatisfactory health of the lead counsel. On April 10, 1998, three days before the scheduled trial, Woodall entered his guilty plea and sought to continue the penalty phase because he needed the time to assess a mental health defense. The motion for continuance was denied and the night before the penalty phase was to begin, lead counsel was again stricken by illness. An experienced local attorney who had handled several capital cases in the past was appointed to the defense team. On June 12, 1998, she filed a motion for continuance claiming that she could not be prepared because of the complexity of the case. The motion was denied. The trial judge did not abuse his discretion by refusing the motion for continuance.

This Court has stated on several occasions that a trial judge has broad discretion in either granting or denying a continuance. The reviewing court should not reverse a criminal conviction unless the trial judge has abused his discretion in the denial of a continuance. See *Abbott v. Commonwealth*, Ky., 822 S.W.2d 417 (1992) and *Dishman v. Commonwealth*, Ky., 906 S.W.2d 335 (1995) citing *Pelfrey v. Commonwealth*, Ky., 842 S.W.2d 524 (1993).

Woodall claims that his case should be analyzed according to the factors set out in *Snodgrass v. Commonwealth*, Ky., 814 S.W.2d 579 (1991). We have conducted such an analysis and find that the *Snodgrass* factors all favor the denial of an additional continuance. As observed in *Snodgrass*, a continuance is appropriate in a particular case depending on the unique facts and circumstances of that case.

Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.

New counsel for Woodall did not specify the length of the delay in the continuance motion but simply lamented the fact that she had 40 to 50 people to interview and that it obviously would take a very long time. The trial judge had previously noted that the penalty phase was taking place almost 14 months after the crimes had occurred.

Previous continuances had resulted in a delay of almost nine months from the original trial date to the eventual penalty phase. The claim of medical necessity by the defense is without merit because there were other experienced attorneys who

could have been assigned to the case when lead counsel became ill. There was definite inconvenience to the Commonwealth as a litigant because a number of witnesses it planned to call would have been greatly inconvenienced if the trial had been delayed yet again. The trial judge made particular reference to this fact in his denial of the March 30 continuance sought by the defendant. The trial judge indicated that he had a heavy schedule throughout August and September and could not delay the case without serious inconvenience to other litigants on his docket.

The fourth *Snodgrass* factor is whether the delay is purposeful or caused by the accused. Here the record indicates that Woodall challenged the request of the prosecution for a mental health evaluation from the outset of the attempts to evaluate him by seeking a writ of prohibition with the Court of Appeals and ultimately with this Court alleging irreversible injury if he was examined. On January 26, 1998, less than a month before the second scheduled trial date, he changed his position and then argued for continuance after continuance so he could have more time to prepare a mental health defense. In addition, substitute lead counsel was assigned the case on April 24, 1998 and indicated to the trial judge that she would be prepared by July 14, 1998, even though she realized that this was a death penalty case. We would also note that there was other competent and experienced counsel who was available for the entire year, except for July, and yet no one on the defense team contacted him regarding availability. Eventually the trial judge made the inquiry. Considering the delay factor and the availability of counsel, we cannot find any error in the trial court's ultimate decision.

The complexity of the case does not convince us that there was not sufficient time to prepare. The delay had been at least nine months and the only question was punishment as distinguished from guilt. Finally, there was no identifiable prejudice to Woodall because his counsel had adequate time to investigate his mental condition and to prepare a sufficient defense.

Consequently, as a result of an analysis of the *Snodgrass* factors, we find that the trial judge did not abuse his discretion in denying the final motion for continuance.

63 S.W.3d 104 (2001). The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1. Failure to grant a continuance to enable a defendant to exercise his right to offer testimony of his witnesses can constitute a denial of due process. *Mackey v. Dutton*, 217 F.3d 399,

408 (6th Cir., 2000).  When the denial of a continuance forms the basis of a habeas corpus petition, the petitioner must not only show an abuse of discretion, but also must demonstrate that the denial was so arbitrary and fundamentally unfair or arbitrary so as to violate due process.  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

2.  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process."  Id.  However, the Sixth Circuit has held that, in reviewing the denial of a motion for continuance, a court should consider the following factors in determining whether a defendant has been deprived of his rights:

> [T]he diligence in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Mackey*, supra.

3.  Counsel's vague protestations of need for more time lacked sufficient specificity and likelihood of generating favorable testimony to rise to the level of a denial of due process.

### Twelfth Claim

The petitioner's twelfth claim is that the trial judge abused his discretion by denying his motion for funding to conduct a positron emissions tomography (PET) scan and other psychological testing.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court disposed of the claim as follows:

> Woodall argues that there was a reasonable necessity for the tests and that he was deprived of due process as a result of the denial.
>
> At a hearing on his motion, Woodall sought funding for the brain imaging procedure known as "Positron Emissions Tomography" or PET. He alleged that he suffered from various brain disorders and the PET scan would allow an evaluation to be made

30

about certain portions of the brain that may not be functioning appropriately. Dr. Eric Drogin, a psychologist and attorney employed by the defense, testified at the hearing conducted by the trial court. He stated that he had met Woodall twice, once for 5 1/2 hours and another time for 45 minutes. He did not issue a written report on either occasion and he did not do a separate psychological history of Woodall but rather relied on the history provided by the Kentucky Correctional Psychiatric Center (KCPC) as prepared by Dr. Richard Johnson.

The report prepared by KCPC indicated that Woodall had been observed as an inpatient around the clock and a series of clinical and forensic interviews had been conducted by Dr. Johnson. Dr. Johnson testified for Woodall at the penalty phase of the trial and his report was introduced as mitigating evidence.

The Kentucky standard for review of this claim is whether there was a reasonable necessity for funding to conduct additional neuropsychological testing. *Sommers v. Commonwealth*, Ky., 843 S.W.2d 879 (1992). The trial judge correctly determined that the testimony of defense witness Dr. Drogin was unpersuasive because the psychologist had not spent much time with defendant, had not kept records and had not issued a written report. In addition, he had not done a psychological history of the defendant. The KCPC report specifically eliminated the possibility of organic brain damage. We find no error in the decision of the trial judge in declining to grant a continuance or to allow funding for additional testing. <u>See</u> *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988), in a case which determined whether the defendant in that matter was competent to stand trial.

We are not persuaded by the reliance on *Binion v. Commonwealth*, Ky., 891 S.W.2d 383 (1995) because it is factually distinguishable. In that case the KCPC report mentioned the possibility of an organic brain defect and there was a strong factual basis for his claim that additional testing was reasonably necessary.

63 S.W.3d 104 (2001). The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1. The petitioner argues that his position is supported by *Ake v. Oklahoma*, 470 U.S. 68 (1985). *Durr v. Mitchell*, 487 F.3d 423 (6th Cir., 2007), interpreted *Ake* as follows:

In *Ake* ..., the Supreme Court held that an indigent defendant is entitled to expert assistance in two scenarios: (1) where the defendant's sanity at the time of the offense

is likely to be a significant factor at trial; or (2) where the prosecution submits evidence of a capital defendant's future dangerousness through the state's own psychiatrists. *Ake*, 470 U.S. at 82-84, 105 S.Ct. 1087 ("The risk of error from denial of [expert] assistance, as well as its probable value, is most predictably at its height when the defendant's mental condition is seriously in question.... [This] discussion compels a similar conclusion in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness."); see also *Skaggs v. Parker*, 235 F.3d 261, 272 (6th Cir., 2000) (interpreting *Ake* to recognize that an indigent defendant is entitled to psychiatric assistance during sentencing if sanity was a significant issue at trial or state first presents evidence of future dangerousness).

2.  Because the petitioner pled guilty, his sanity at the time of the offenses was not a significant issue at trial. The prosecution did not first present evidence of future dangerousness. Therefore, the petitioner's reliance upon *Ake* is unpersuasive.

3.  The state court's determination that a PET scan at the government's expense was not reasonably necessary to the petitioner's defense was entitled to a presumption of correctness.

4.  The state court's determination that the trial judge's denial of a PET scan and other psychological testing did not rise to the level of a violation of due process was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Thirteenth Claim

The petitioner's thirteenth claim is that the trial judge erred in failing to hold a competency hearing. In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found the claim to be procedurally defaulted and without merit, to-wit:

> Appellant's claims of error in failing to hold a competency hearing ... should have been raised on direct appeal. We note, however, the trial court, sua sponte, ordered a mental health evaluation of Appellant at Kentucky Correctional Psychiatric Center as a "precaution." Dr. Richard Johnson's evaluation revealed that Appellant was competent to stand trial .... Furthermore, nothing in the record indicates Appellant ... is incompetent, and his allegations supporting this claim are speculative.

2005 WL 3131603. The magistrate judge concludes that the claim is procedurally defaulted under state law and that the state court's finding that the claim is without merit was not contrary to nor did

it involve an unreasonable application of United States Supreme Court precedents.

### Fourteenth Claim

The petitioner's fourteenth claim is that the trial judge erred in failing to find him to be mentally retarded.  In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found the claim to be procedurally defaulted and without merit, to-wit:

> Appellant's claims of error ... in failing to find Appellant mentally retarded should have been raised on direct appeal. We note, however, the trial court, <u>sua sponte</u>, ordered a mental health evaluation of Appellant at Kentucky Correctional Psychiatric Center as a "precaution." Dr. Richard Johnson's evaluation revealed that ... there was no evidence of mental retardation. Furthermore, nothing in the record indicates Appellant is mentally retarded ..., and his allegations supporting this claim are speculative.

2005 WL 3131603.  The magistrate judge concludes that the claim is procedurally defaulted under state law and that the state court's finding that the claim is without merit was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Fifteenth Claim

The petitioner's fifteenth claim is that trial counsel was constitutionally ineffective for failing to request a competency hearing.  In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found the claim to be without merit for the following reasons:

> Appellant first argues trial counsel was ineffective for failing to request a competency hearing ....  As stated above, Dr. Johnson found no evidence of incompetence ....  Consequently, failing to pursue these avenues of trial strategy is not ineffective assistance of counsel.

2005 WL 3131603.   To be constitutionally ineffective, counsel's performance must have been deficient, and the deficiency must have been prejudicial.  <u>See</u> *Strickland v. Washington*, 466 U.S. 668 (1984).  The magistrate judge concludes that the state court's finding that the claim is without merit under the first prong of the *Strickland* test was not contrary to nor did it involve an

33

unreasonable application of United States Supreme Court precedents.

## Sixteenth Claim

The petitioner's sixteenth claim is that trial counsel was ineffective for failing to raise his mental retardation as an issue.  In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found the claim to be without merit for the following reasons:

> Appellant first argues trial counsel was ineffective for ... failing to raise mental retardation as an issue. As stated above, Dr. Johnson found no evidence of ... mental retardation. Consequently, failing to pursue these avenues of trial strategy is not ineffective assistance of counsel.

The magistrate judge concludes that the state court's finding that the claim is without merit under the first prong of the *Strickland* test was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

## Seventeenth Claim

The petitioner's seventeenth claim is that trial counsel was ineffective for forcing him to enter a guilty plea, and then later for failing to move to withdraw the plea.  In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found that "[t]his argument was raised and disposed of on direct appeal, and Appellant is barred from shrouding his involuntariness claim as ineffective assistance of counsel."  2005 WL 3131603.   The magistrate judge concludes that the state court's finding that the petitioner's ineffectiveness claim is without merit because it was voluntarily, intelligently, and knowingly entered was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

## Eighteenth Claim

The petitioner's eighteenth claim is that counsel was ineffective for failing to present additional mental health expert testimony in support of a third continuance prior to the April 1998 trial date.  In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found that

counsel did not perform deficiently for the following reasons:

> Counsel presented the testimony of one psychiatric expert, but Appellant claims it was not enough. When claiming ineffective assistance, Appellant may not base his claims merely on the fact that a defense tactic was unsuccessful. [*Strickland v. Washington*, 466 U.S. 668, 690 (1984)]. We find the testimony of one expert on the subject to be sufficient and reasonable assistance of counsel.

2005 WL 3131603. The magistrate judge concludes that the state court's finding that counsel was effective under the first prong of the *Strickland* test was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Nineteenth Claim

The petitioner's nineteenth claim is that counsel was ineffective for failing to present an insanity defense. In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found that counsel did not perform deficiently for the following reasons:

> We address the next four claims together, as they all relate to mental health evaluation. Appellant claims counsel was ineffective for failing to present an insanity defense, an extreme emotional disturbance defense, a genetic defect defense, and failing to pursue further neurological testing. We find all of these claims are without merit.

> Defense counsel chose a trial strategy which is not subject to second-guessing at this time. It was reasonable for defense counsel to rely on Dr. Johnson's evaluation, as well as the testimony of other mental health experts. See [*Haight v. Commonwealth*, 41 S.W.3d 436, 441, 447 (Ky. 2001)]. Appellant opines that trial counsel failed to investigate this plethora of mental health defenses.

> The decision not to investigate must be professionally reasonable under the circumstances, and the reviewing court gives great deference to trial counsel's decisions. *Strickland*, supra at 691. In this case, defense counsel's decisions were objectively reasonable, and Appellant relies on hindsight to claim counsel used the wrong strategy. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight...." Id. at 689. Even if defense counsel had put forth each of these mental health claims, Appellant still would not be entitled to relief pursuant to the standard set forth in Strickland.FN1 As a result, we find Appellant's allegations do not rise to the level of ineffective assistance of counsel.

35

FN1. "When a defendant challenges a death sentence ... the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, supra at 695.

The magistrate judge concludes that the state court's finding that counsel was effective was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Twentieth Claim

The petitioner's twentieth claim is that counsel was ineffective for failing to present a genetic defect defense.  The magistrate judge concludes that the state court's disposition of the claim was not contrary to our standard of review for the same reasons discussed in connection with the petitioner's nineteenth claim.

### Twenty-First Claim

The petitioner's twenty-first claim is that counsel was ineffective for failing to pursue further neurological testing.  The magistrate judge concludes that the state court's disposition of the claim was not contrary to our standard of review for the same reasons discussed in connection with the petitioner's nineteenth claim.

### Twenty-Second Claim

The petitioner's twenty-second claim is that, although defense counsel offered the jury evidence of his fecal incontinence, counsel was ineffective in failing to convince the jury that he did not deserve the death penalty.   In affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court found that counsel did not perform deficiently for the following reasons:

Appellant's next three claims focus on mitigation evidence presented by the defense.

> Appellant acknowledges defense counsel offered the jury evidence of Appellant's fecal incontinence, squalid upbringing, and childhood sexual abuse. Appellant argues, however, that defense counsel was ineffective in convincing the jury that Appellant did not deserve the death penalty. The record reflects that defense counsel acted reasonably, and advocated Appellant's plight as appropriate under the circumstances. Furthermore, even if defense counsel had been a more zealous advocate of this evidence, it still would not create a reasonable probability the jury would have returned a lesser sentence. Accordingly, we find no ineffective assistance of counsel.

The magistrate judge concludes that the state court's finding that counsel was not ineffective was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Twenty-Third Claim

The petitioner's twenty-third claim is that, although defense counsel offered the jury evidence of his squalid upbringing, counsel was ineffective for failing to convince the jury that he did not deserve the death penalty. The magistrate judge concludes that the state court's disposition of the claim was not contrary to our standard of review for the same reasons discussed in connection with the petitioner's twenty-second claim.

### Twenty-Fourth Claim

The petitioner's twenty-fourth claim is that, although defense counsel offered the jury evidence of his childhood sexual abuse, counsel was ineffective for failing to convince the jury that he did not deserve the death penalty. The magistrate judge concludes that the state court's disposition of the claim was not contrary to our standard of review for the same reasons discussed in connection with the petitioner's twenty-second claim.

### Twenty-Fifth Claim

The petitioner's twenty-fifth claim is one of juror misconduct based upon an affidavit of one

of the jurors in the sentencing trial to the effect that she brought prejudicial extraneous Bible verses relating to capital punishment into the jury room and provided the material to other jurors.  In affirming the denial of the petitioner's CR 60.02 claim, the Supreme Court of Kentucky found that the claim is procedurally barred under state law and without merit.  The Kentucky Supreme Court characterized the claim as follows:

> Appellant's CR 60.02 claim stems from an affidavit signed by Juror H, a juror in the sentencing trial, stating she looked up Bible verses relating to capital punishment on the Internet, printed them out, and brought the verses to the jury room during deliberations. Appellant argues Juror H brought prejudicial extraneous information into the jury room and provided the material to other jurors. Juror H's affidavit, however, states she does not know if any other jurors actually looked at her Bible verses, and she is not exactly sure which day of the sentencing trial she took the verses to court.

2005 WL 2674989. The Kentucky Supreme Court prefaced its finding that the claim is procedurally barred upon the following chronology:

> It is necessary to consider the chronology of the post-conviction events. The United States Supreme Court denied certiorari on October 7, 2002. Thereafter, the governor signed a death warrant with an execution date of December 10, 2002. As a result, Appellant claims he was "forced by the Commonwealth" to file an RCr 11.42 motion in a short period of time. In his RCr 11.42 motion Appellant made no allegations of juror misconduct, although one juror, Juror M, had been interviewed at that time. Juror M gave Appellant no information favorable to his argument as she stated there was no juror misconduct, extraneous prejudicial information, or improper outside influence.
>
> After the unfavorable interview with Juror M, Appellant alleged other claims in his RCr 11.42 motion, which he filed December 3, 2002, seven days before his scheduled execution date. Pursuant to this filing, the execution date was set aside until Appellant's pending claims could be resolved. The trial court denied Appellant's motion to vacate the death sentence pursuant to RCr 11.42 on April 22, 2003. Appellant's investigators interviewed Juror H on May 31, 2003. She executed a "preliminary" affidavit on June 9, 2003, and signed a "cleaned-up" affidavit on September 10, 2003. Appellant filed a claim pursuant to CR 60.02(f) on June 1, 2004.

The Kentucky Supreme Court found that the claim is procedurally barred for the following reasons:

First, we analyze the standard by which CR 60.02(f) relief is granted. The rule allows a trial court to set aside a final judgment for "any other reason of an extraordinary nature justifying relief." CR 60.02(f). Our leading case on CR 60.02 is *Gross v. Commonwealth*, 648 S.W.2d 853 (Ky.1983). Procedurally, Gross requires Appellant to first seek relief pursuant to RCr 11.42 and to "state all grounds for holding the sentence invalid of which the movant has knowledge" in the RCr 11.42 proceedings. Id. at 856 (quoting RCr 11.42(3))(emphasis added). Thereafter, a defendant may request extraordinary relief pursuant to CR 60.02, but may not rehash arguments that were or should have been raised on direct appeal or pursuant to RCr 11.42. Id.

In this case, Appellant argues that a "premature" death warrant prevented him from fully developing and investigating all of his claims prior to the filing of the RCr 11.42 motion. We find this claim to be unconvincing. The death warrant was not "premature" in this case because the Governor is authorized to set a date of execution at any time after a death sentence has been affirmed. KRS 431.218. It is not within our power to disturb the Governor's policy on such matters. *Bowling v. Commonwealth*, 926 S.W.2d 667, 669 (Ky.1996).

Moreover, as noted in *Baze v. Commonwealth*, 23 S.W.3d 619, 623 (Ky.2000), "[A]ppellant had over fourteen months from the issuance of this Court's opinion affirming his conviction to prepare an RCr 11.42 motion." FN1 Thus, Appellant has set forth no valid excuses for waiting until three weeks before his scheduled execution to interview Juror M. Ostensibly, once Juror M stated there was no wrongdoing by jurors, Appellant apparently chose not to pursue any other interviews as a matter of strategy.

FN1. This Court's opinion affirming Appellant's death sentence was issued August 23, 2001. The United States Supreme Court denied certiorari on October 7, 2002.

Finally, even if Appellant's counsel did not feel there was sufficient time to fully investigate potential juror misconduct before filing the RCr 11.42 motion, an amendment to that motion could have been filed after further investigation. As we recognized in *Bowling*, the nature of an RCr 11.42 motion is that it must be both speedy and specific, and accordingly, " 'leave [to amend] shall be freely given when justice so requires." ' *Bowling*, supra, at 670 (quoting CR 15.01). Thus, for the reasons set forth herein, Appellant's CR 60.02 claim is procedurally barred since the issue set forth within it should have been raised in his RCr 11.42 motion. *Gross*, supra, at 857 ("The language of RCr 11.42 forecloses the defendant from raising any questions under CR 60.02 which are 'issues that could reasonably have been presented' by RCr 11.42 proceedings.").

The Kentucky Supreme Court found that the claim is without merit for the following reasons:

Even if Appellant's claims were not procedurally barred, relief would not be available, as his allegations are without merit. However, because this is a death penalty case, we will nonetheless address Appellant's juror misconduct claim.

Appellant argues the trial court erred in finding that RCr 10.04 is a barrier to relief. The rule states "[a] juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." RCr 10.04. The trial court has great latitude in deciding whether to grant a new trial, and the decision is disturbed only for abuse of discretion. *Jillson v. Commonwealth*, 461 S.W.2d 542, 545 (Ky.1970). We find the trial court properly denied Appellant's request for a new trial and correctly relied upon RCr 10.04 to bar juror testimony.

Appellant contends that the testimony of Juror H regarding what may have occurred in the deliberation room warrants a new trial. RCr 10.04 and the accompanying case law recognize that a juror's testimony regarding deliberations cannot be used to impeach the verdict. <u>See</u> *Hicks v. Commonwealth*, 670 S.W.2d 837, 839 (Ky.1984); *Grace v. Commonwealth*, 459 S.W.2d 143 (Ky.1970); *Bowman v. Commonwealth*, 284 Ky. 103, 143 S.W.2d 1051, 1054 (1940).

Appellant argues his case is similar to *Ne Camp v. Commonwealth*, 311 Ky. 676, 225 S.W.2d 109 (1949). In *Ne Camp*, a juror consulted with a priest regarding the moral implications of imposing the death penalty, and then told another juror during deliberations that the priest advised it was not a moral sin. <u>Id.</u> at 111-12. The *Ne Camp* Court found juror misconduct "obvious" and reversed the judgment of the trial court. <u>Id.</u> at 112.

Appellant relies upon *Ne Camp* because the Court accepted juror testimony regarding juror misconduct during deliberations. However, we find Appellant's reliance to be misplaced. In *Gall v. Commonwealth*, 702 S.W.2d 37, 44 (Ky.1985), this Court distinguished *Ne Camp*, stating, "*Necamp* does not sanction examination of jurors to search for inconsistencies in their deliberations. *Necamp* only addresses the issue of jurors who consult with others and carry their advice into the jury room." <u>Id.</u>

We find the reasoning of *Gall* applicable here. In this case, aside from Juror H's uncorroborated affidavit, there is no evidence establishing what was actually brought into the jury room or that any other juror was affected by the presence of these materials. Juror H stands alone in her allegations, and we find such singular evidence to be insufficient to prove juror misconduct in this instance.

> Conversely, there was sufficient evidence for the jurors to reach an impartial, unanimous decision imposing the death penalty, especially in light of Appellant's voluntary guilty plea to the heinous murder of Sarah Hansen. The relevant public policy concerns of finality of a jury verdict, protecting jurors from continued post verdict interference, and maintaining the integrity of the jury trial system would be undermined if lone jurors were routinely permitted to second-guess the deliberative process once the trial is over. After the trial is over, the collective jury decisional process no longer exists. Accordingly, we find no abuse of the trial court's discretion, and agree that RCr 10.04 bars the proffered juror testimony in this case.

2005 WL 2674989.  The magistrate judge concludes that the claim is procedurally defaulted under state law and that the state court's finding that the claim is without merit was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1.  This court is not in a position to second-guess the state court's determination that the claim was procedurally defaulted under state law.

2.  Even if there was some misconduct on the part of Juror H in obtaining copies of Bible verses for herself and other jurors, a federal habeas court will "review constitutional errors at trial such as Sixth Amendment violations [predicated upon juror misconduct] under a harmless error standard. ... The habeas petitioner must show that the trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir., 2003) quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

3.  The petitioner has failed to show that the Bible verses in question failed to present both sides of the issue and/or prevented any member of the jury from following the instructions given by the court.

41

4.  The jury was instructed to base its decision on the facts and the law as stated by the judge. A reviewing court should presume that jurors follow their instructions.  See *Kansas v. Marsh*, 548 U.S. 163 (2006) ("jurors [are] presumed to follow their instructions") and *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (applying "the almost invariable assumption of the law that jurors follow their instructions").

5.  Federal habeas courts have held that, even assuming that it was misconduct for a jury to consider, during the penalty phase of a capital case, Biblical references that bore on the propriety of a death penalty, these references had no substantial and injurious effect.  See, for example, *Fields v. Brown*, 503 F.3d 755 (9th Cir., 2007), and cases cited therein.

### Twenty-Sixth Claim

The petitioner's twenty-sixth claim is that Juror H's uncorrected misconduct was tantamount to an Establishment Clause violation of the First Amendment because a juror is deemed to be a state actor.  The petitioner has cited no authority for the proposition that juror misconduct involving Bible verses may constitute a violation of the Establishment Clause, and the undersigned is unaware of any such authority.  The magistrate judge concludes that the petitioner's argument is unprecedented and unpersuasive.

### Twenty-Seventh Claim

The petitioner's twenty-seventh claim is that the death penalty is a disproportionate punishment as applied in his case.  In affirming his convictions upon direct appeal, the Kentucky Supreme Court found that the claim was not cognizable from the standpoint of the United States Constitution for the following reasons:

42

Specifically, [Woodall] claims that this Court should conduct a proportionality review and rule that his sentence is disproportionate because other criminal defendants who have committed similar crimes under similar circumstances were able to avoid the death penalty.

The United States Supreme Court has rejected the idea that this specific form of proportionality review is constitutionally required. See *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The Sixth Circuit has also rejected the argument in *McQueen v. Scroggy*, 99 F.3d 1302 (6th Cir., 1996).

63 S.W.3d 104.   The Kentucky Supreme Court found that the death sentence was not disproportionate as a matter of state law:

However, this Court, pursuant to KRS 532.075 has reviewed the death sentence imposed in this case and concludes that it was not fixed under the influence of passion, prejudice or any other arbitrary factor. The evidence supports the finding of an aggravating circumstance. We have considered whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, as required by statute and have considered all circumstances of the crime committed here, and all of the evidence surrounding the defendant and his background. The information used in considering this penalty has been compiled in accordance with KRS 532.075(6)(a)(b) and (c). We have considered all the cases in which the death penalty was imposed since 1970 involving both the crime and the defendant. On the basis of this review, we have determined that the sentence of death in this case is not excessive or disproportionate to the penalty imposed in similar cases considering both the crimes and the defendant.

The magistrate judge concludes that the petitioner's claim is not cognizable in a federal habeas corpus petition. See 28 U.S.C. § 2254(a) (a federal court may "entertain an application for a writ of habeas corpus ... only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

### Twenty-Eighth Claim

The petitioner's twenty-eighth claim is a variation on the following issue that was decided upon direct appeal by the Kentucky Supreme Court:

43

The trial judge properly relied on nonstatutory aggravating factors to enhance the sentence. Woodall claims that such use is unconstitutional. Similar arguments have been rejected by this Court in *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1986); *Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999) and *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13 (1998). The use of nonstatutory aggravating circumstances is permissible as long as the jury makes the required finding that at least one statutory aggravating circumstance exists. We find no error in this respect.

63 S.W.3d 104.  The petitioner now argues that the factors relied upon by the trial judge were "unconstitutionally vague."  The petitioner does not dispute that the jury made the required finding that at least one statutory aggravating circumstance exists.  Therefore, the trial judge's reliance upon other factors, whether vague or not, was immaterial.  The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

### Twenty-Ninth Claim

The petitioner's twenty-ninth claim is that he is incompetent to be executed.  In his reply to the respondent's response to the petition, the petitioner apparently concedes that in light of *Panetti v. Quarterman*, 127 S.Ct. 2842 (2007), which was decided after the present petition was filed, the claim is not "ripe" for adjudication at the present time and will not be "ripe" until his mental state can be determined near the time of execution (Docket Entry No. 21, p. 132).  The petitioner asks that the claim be dismissed without prejudice.

### Thirtieth Claim

The petitioner's thirtieth and final claim is one of cumulative error.  The magistrate judge concludes that the claim is without merit because he has failed to show any errors to accumulate.  Furthermore, "the law of this Circuit is that cumulative error claims are not cognizable on habeas." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir., 2006).

44

## RECOMMENDATION

The magistrate judge RECOMMENDS that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Entry No. 6) be DENIED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).

45